1   Morgan, Lewis & Bockius LLP
    Claire M. Lesikar, WSBA No. 60406
    1301 Second Avenue, Suite 2800
2   Seattle, WA 98101
    Telephone:    +1.206.274.6400
3   Email: claire.lesikar@morganlewis.com

4   Morgan, Lewis & Bockius LLP
    Eric Meckley, *Pro Hac Vice*
    One Market
5   Spear Street Tower, 28th Floor
    San Francisco, CA 94105-1596
    Telephone:    +1.415.442.1000
6   Email: eric.meckley@morganlewis.com

7   *Attorneys for Defendant X CORP*

The Honorable Thomas O. Rice

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARNAUD WEBER, | Case No. 2:23-cv-00233-TOR |
| Plaintiff, | **DECLARATION OF LAUREN WEGMAN IN SUPPORT OF DEFENDANT X CORP.'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| X CORP and JOHN/JANE DOES I-V, | |
| Defendants. | December 14, 2023 |

DECLARATION OF LAUREN WEGMAN
ISO DEFENDANT'S MOTION TO
COMPEL ARBITRATION
DB1/ 142308508.1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6400

**DECLARATION OF LAUREN WEGMAN**

I, Lauren Wegman, do declare under the penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I have worked at X Corp. (formerly known as Twitter, Inc.) for 5 years. In March 2023, Twitter, Inc. merged with X Corp. and Twitter no longer exists. Currently, I hold the title of Senior Director, People. My team is responsible for Global People Operations, which includes employee onboarding and off-boarding and management of employee data and personnel changes.

2. As part of my job duties, I have personal knowledge of X Corp.'s current processes and practices, and its historical processes and practices (when the company was known as Twitter, Inc.) dating back at least to July 2019, for onboarding new employees, including how X Corp. presents applicants for U.S. positions with an offer letter and a Dispute Resolution Agreement, the process for applicants to review, sign, and submit documentation relating to their prospective employment, and X Corp.'s record-keeping systems related to the applicant's execution of the offer letter and Dispute Resolution Agreement and submission of a request, if any, to opt out of the Agreement, all of which X Corp. maintains in the ordinary course of business. My knowledge of X Corp.'s practices is based on information I have learned in the course of my work, including through my review of X Corp. documents and my understanding of its systems. If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

3. Since at least 2019, a member of X Corp.'s Global People Operations Team has prepared offer packets for candidates generating onboarding documents, including an offer letter

DECLARATION OF LAUREN WEGMAN
ISO DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 1
DB1/ 142308508.1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6400

and onboarding packet. When the offer is accepted, the new hire record—which includes the offer letter and onboarding packet—is then transferred to our HRIS system (called Workday) where an employee file is created. The offer packet includes the applicant's offer letter and a Dispute Resolution Agreement, among other things. X Corp. sends the applicant's offer packet to the applicant using the email address that the applicant provided during the application process, or the employee's company email address if the offer packet was generated during the conversion from an independent contractor position to a position as a full-time employee.

4. An applicant's offer letter explains the steps the applicant needs to take to accept the offer, which includes signing the offer letter and the other documents in the offer packet, including the Dispute Resolution Agreement, and returning them to X Corp. by a specific date on which the offer expires.

5. I have reviewed the personnel records for Plaintiff Arnaud Weber, which contain a signed offer letter and a Dispute Resolution Agreement bearing Weber's signature and dated July 19, 2019. Attached hereto as **Exhibit A** is a true and correct copy of Weber's signed offer letter and his Dispute Resolution Agreement, which are maintained in his personnel records in the ordinary course of business. On July 19, 2019, Weber signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Weber's personal email address.

6. Based on my experience and job responsibilities at X Corp., I know that X Corp.'s policy is to allow employees to opt out of X Corp.'s Dispute Resolution Agreement so long as an employee submits a Dispute Resolution Agreement Opt-Out Form to Human

DECLARATION OF LAUREN WEGMAN
ISO DEFENDANT'S MOTION TO
COMPEL ARBITRATION -2
DB1/ 142308508.1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6400

Resources within 30 days of receipt of the Dispute Resolution Agreement. For this reason, the Dispute Resolution Agreement is not a condition of employment at X Corp. Dispute Resolution Agreement Opt-Out Forms are kept in an employee's personnel records in the ordinary course of business. Weber does not have a Dispute Resolution Opt-Out Form in his personnel records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Signed on November 14, 2023, in San Francisco, California.

_____
Lauren Wegman
November 14, 2023
DECLARATION OF LAUREN WEGMAN
ISO DEFENDANT'S MOTION TO
COMPEL ARBITRATION -3
DB1/ 142308508.1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6400

# EXHIBIT A

July 19, 2019

Arnaud Weber
Via email ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dear Arnaud,

Welcome to the Flock! On behalf of Twitter, Inc. (the '**Company**'), I am very pleased to offer you a position as the Company's Vice President, Ads Engineering.  This letter outlines the proposed responsibilities and compensation for you in this role (the '**Agreement**').

1. **Start Date.**  Your employment will commence on or before September 09, 2019 ('**Start Date**'). You will be providing services from the Company's headquarters in San Francisco, California. Your Start Date and employment are subject to the conditions set out below, in the Conditions on Offer section.

2. **Role and Responsibilities.** As Vice President, Ads Engineering, you will report at the start of your employment to the Engineering Lead and will render such business and professional services in the performance of your duties consistent with the Vice President, Ads Engineering position and as will reasonably be assigned to you by your manager.  This is a regular, full-time position.  Without limiting your obligations to the Company, during your employment you must serve the Company faithfully and diligently to the best of your ability and perform the duties the Company assigns to you to the best of your abilities and knowledge.  The Company reserves the right, in its sole discretion, to change your job title and reporting structure from time to time.  By signing this Agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

3. **Base Salary.**  The Company will pay you a gross salary at an annualized rate ▮▮▮▮▮▮▮▮▮▮▮▮, payable in accordance with the Company's standard payroll schedule.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Performance Bonus Plan.**  You will be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time.  For the current Performance Bonus Plan year, the Performance Bonus Plan target for your position is 40% of annual Base Salary, paid pursuant to the terms and conditions in the Performance Bonus Plan**.**

5. **Equity Compensation**.  Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company as your new hire grant ('**New Hire RSUs**'). The number of New Hire RSUs that are granted to you, if approved, will be determined by dividing ▮▮▮▮▮▮▮▮▮▮▮▮ by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of

this offer letter.  For the New Hire RSUs, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason.

The New Hire RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the '**Equity Documents**'). You will vest in 25% of the New Hire RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and the balance will vest 6.25% quarterly thereafter over your next three years of continuous service with the Company, as will be further described in the Equity Documents.

Be advised that the calculation used to determine the number of New Hire RSUs granted to you during your employment is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of the New Hire RSUs. Stock price is by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.  In addition, please note that the terms of the Company's equity plans are reviewed periodically, and subject to revision at the Company's sole discretion.

6.   **Employee Benefits**.  As a regular employee of the Company, you will be eligible to receive Company-sponsored benefits in accordance with the terms of the applicable benefit plans. The Company may replace, change or cease providing these benefits and remuneration and the terms on which they are provided at any time at its discretion. In addition, you will be entitled to paid vacation in accordance with the Company's vacation policy, as in effect from time to time.

7.   **Conditions on this Offer.**  This offer of employment and your commencement of employment with the Company is conditioned upon the following terms and conditions.

   a)   Your providing legal proof of your identity and authorization to work in the United States within three days of the commencement of your employment.

   b)   Your signing of the Company's standard Employee Invention Assignment and Confidentiality Agreement ('**Confidentiality Agreement**'), which includes restrictions on your ability to engage in outside activities, and other restrictions during and following your employment, as described in the Confidentiality Agreement.  A copy of the Confidentiality Agreement is enclosed with this letter.

   c)   Your disclosure, and resolution to the satisfaction of the Company, of any contractual commitments or legal obligations that would prohibit, restrict or interfere with your ability to perform your duties for the Company.

   d)   Your successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by the People Operations team.

8. **Acknowledgement re: Compensation.** You acknowledge and agree that if during the recruiting process you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting. You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

9. **Employment Relationship**. Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

10. **Outside Activities.** While you render services to the Company, you agree that you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. You will be permitted to join one outside corporate board of directors, subject to Company approval, no earlier than one year from your hire date. While you render services to the Company, you also agree to not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company. In addition, for a period of one (1) year after the termination of your services, you agree to not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

11. **Taxes**. All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

12. **Dispute Resolution.** We sincerely hope that no dispute will arise between us. If a dispute should arise, it can be resolved through the Company's Dispute Resolution Agreement, which is enclosed for your signature.

13. **Entire Agreement**. This Agreement, along with the Confidentiality Agreement, the documents governing the equity award(s) described herein, and the other documents referenced in this Agreement, supersede and replace any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company relating to the subject matters described herein. This Agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company

Until all of the conditions to this offer have been satisfied, please do not make any changes in your present living or employment circumstances.

Please indicate your acceptance of this Agreement, and confirmation that it contains our complete agreement regarding the terms and conditions of your employment, by signing this Agreement and enclosures (including the Confidentiality Agreement) via Adobe Sign.  This offer will expire if the signed documents are not returned by 5:00pm PT on July 19, 2019.

*Very truly yours,*

**Twitter, Inc.**

*Leslie Berland*
**Leslie Berland**
**Head of People**

I have read, understood and accept all the provisions of this Agreement:

*Arnaud Weber*
Arnaud Weber (Jul 19, 2019)

Arnaud Weber

Jul 19, 2019

Date

Enclosures

# DISPUTE RESOLUTION AGREEMENT

**This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

**You can choose to opt out of this Agreement – you have 30 days to opt out.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides or required by law, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov) the U.S. Department of Labor (www.dol.gov) the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.



### 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

### 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

### 5. How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**. Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

### 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

 

### 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

### 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hrlegaldocs@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

### 9. Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

### 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of Employee's employment with the Company.

**AGREED:**

*[signature]*

Leslie Berland, Head of People
TWITTER, INC.

**By signing below, I acknowledge and agree to the terms of this Dispute Resolution Agreement, and confirm I am aware of my right to opt out per the terms of this Agreement:**

EMPLOYEE NAME PRINTED      *Arnaud Weber*
                          Arnaud Weber (Jul 19, 2019)

EMPLOYEE SIGNATURE         Arnaud Weber

Date:                      Jul 19, 2019

rev.NOV2018          ACW
                                         ACW     3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

*s/ Monica Brennan*
Monica Brennan, Legal Secretary

DECLARATION OF LAUREN WEGMAN
ISO DEFENDANT'S MOTION TO COMPEL
ARBITRATION

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6400

DB2/ 46945190.