THE HONORABLE THOMAS O. RICE

Michael C. Subit
Ellicott K. Dandy
Frank Freed Subit & Thomas LLP
705 2nd Avenue, Suite 1200
Seattle, WA 98104
Ph: (206) 682-6711

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

ARNAUD WEBER,

    Plaintiff,

v.

X CORP., ELON MUSK, LINDA YACCARINO, and JOHN/JANE DOES III-V,

    Defendants.

Case No. 2-23-cv-00233-TOR

**PLAINTIFF'S RESPONSE TO DEFENDANT X CORP.'S MOTION TO COMPEL ARBITRATION**

December 22, 2023
Without Oral Argument

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 1
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

## I. INTRODUCTION

This Court should deny Defendant X Corp.'s Motion to Compel Arbitration because X Corp. breached the parties' arbitration agreement and waived its right to arbitrate Plaintiff Arnaud Weber's claims by repeatedly refusing to arbitrate. In the alternative, Weber respectfully asks the Court to compel X Corp. to arbitrate in accordance with the JAMS Rules and JAMS's rulings. X Corp. seeks dismissal of this action, *see* ECF No. 11 (Mot.) at 1, but because Weber also asserts claims against Defendants Elon Musk and Linda Yaccarino that are not arbitrable, there is no basis to dismiss or stay this case.

## II. BACKGROUND

Weber began working at Twitter, now X Corp., in 2019. ECF No. 1 ("Compl.") ¶ 4.1. Weber signed the Dispute Resolution Agreement ("DRA"), which provides in part, "The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party." *See* ECF No. 12 at 10-13 (DRA) § 4. On July 1, 2022, Twitter offered Weber, who had become Vice-President of Engineering, Compl. ¶ 4.2, a "one-time cash award of $1,500,000" payable in four installments, provided he remained continuously employed through each payment date. *See* Declaration of Michael Subit ¶ 2, Ex. A. Although Weber was continuously employed by Twitter through January 1, 2023, when the second installment was due, Twitter

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 2
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

did not pay that installment. Compl. ¶ 4.9. Twitter terminated Weber's employment on January 4, 2023. *Id.* ¶ 4.10. Defendants have not paid the $375,000 due to Weber. *Id.* ¶ 4.11.

On April 10, 2023, Weber transmitted an arbitration demand to Twitter's legal department via certified mail. *See* Subit Decl. ¶ 3, Ex. B ("Arbitration Demand"); *see also* DRA § 4. Weber received no response. Subit Decl. ¶ 4. On June 8, 2023, Weber sent a demand letter via certified mail to Linda Yaccarino, CEO of Twitter. *Id.* ¶ 5, Ex. C. This letter warned that if Twitter failed to respond to the Arbitration Demand by June 30, 2023, Weber would pursue his claims in court. *Id.* Yaccarino never responded. *Id.* ¶ 6.

Weber is one of thousands of former employees whose claims X Corp. has refused to resolve per the terms of the DRA. *See, e.g.,* Subit Decl. ¶ 7, Ex. D ¶ 140 (explaining that hundreds of arbitration demands "have languished in a dispute resolution no-man's-land, unable to move forward . . . due to Defendants' persistent and intentional efforts to delay the proceedings at every stage."). Where arbitration has commenced, X Corp. has not participated in good faith. For instance, in hundreds of cases, X Corp. disputed the applicability of certain JAMS rules, and when JAMS ruled against X Corp., it simply refused to arbitrate those cases. *See Id.* ¶ 8, Ex. E & ¶ 9, Ex. F. The affected employees were forced to move to compel arbitration against X Corp. in federal court. *Id.* ¶ 10, Ex. G. X

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 3
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

Corp.'s pattern of weaponizing its arbitration agreements is well documented. *See, e.g.,* Daniel Wiessner, *Twitter stalling hundreds of ex-workers' legal cases: lawsuit*, Reuters, July 3, 2023; Joel Rosenblatt, *Twitter Accused of Ducking a Fight Over Musk's Mass Layoffs*, Bloomberg, July 3, 2023 ("Company demanded arbitration but won't engage.").

Weber filed this action on August 17, 2023, bringing claims against Defendant X Corp. for breach of contract, promissory estoppel, failure to pay wages due in violation of RCW 49.48, and willful withholding of wages in violation of RCW 49.52. Compl. In his original complaint, he brought claims for willful withholding of wages in violation of RCW 49.52 against Doe Defendants I-V. *Id.* ¶¶ 3.3, 8.1-8.7. On November 27, in accordance with Fed. R. Civ. P. 15(a)(1)(B), Weber amended his complaint to name Musk and Yaccarino in place of Doe Defendants I-II. ECF No. 18.

### III.  ANALYSIS

X Corp. cannot enforce the DRA because it materially breached the DRA by refusing Weber's demand to arbitrate. Even if X Corp.'s refusal was not a material breach, X Corp. waived its right to arbitrate through the same acts. In the alternative, if the Court compels arbitration, it should do so on the condition that X Corp. abide by the DRA as well as the JAMS Rules and JAMS's interpretations thereof.

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 4
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

### A.     Weber Demanded Arbitration in Accordance with the DRA.

X Corp. argues that because the DRA incorporates JAMS Rules, Weber could have submitted an arbitration demand directly to JAMS after X Corp. refused to arbitrate. *See* Mot. at 2, 8. X Corp. misrepresents the clear terms of the DRA, which provide that JAMS Rules govern *only* "[d]iscovery and conduct of the arbitration hearing." DRA § 5. The DRA does not incorporate the JAMS Rules into the process for initiating arbitration, and instead expressly requires a party to submit a written arbitration demand by first class mail as the sole means of initiating arbitration. *Id.* § 4. That is exactly what Weber did.

X Corp.'s interpretation would render Section 4 superfluous, but the Court must give effect to all provisions of the DRA. *Snohomish Cnty. Pub. Trans. Benefit Area Corp. v. FirstGroup America, Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012) ("interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective . . . ."); *Chiron Corp. v. Ortho Diagnostic Systs., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that the Federal Arbitration Act (FAA) "requires the [C]ourt to enforce the arbitration agreement in accordance with its terms."); *see also* DRA § 10 ("This Agreement is the full and complete agreement . . . ."). X Corp.'s argument that Weber should have filed his arbitration demand directly with JAMS fails.

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 5
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

**B.     X Corp Cannot Enforce an Agreement it Has Materially Breached.**

An employer "cannot compel [its former employee] to honor an arbitration agreement of which it is itself in material breach." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1006 (9th Cir. 2005). "[W]hen an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration." *Id.* "A party is barred from enforcing a contract it has materially breached." *Rosen v. Ascentry Techns., Inc.*, 143 Wn. App. 364, 369, 177 P.3d 765 (2008). A breach is material if it "goes to the root or essence of the contract[.]" *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 220, 317 P.3d 543 (2014).

X Corp. twice refused Weber's demands to arbitrate his cash award claims. Allowing X Corp. to now compel arbitration notwithstanding its initial refusal to arbitrate would "set up a perverse incentive scheme," under which employers would have a license to "refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them." *Brown*, 430 F.3d at 1012. *Brown* compels rejection of X Corp.'s motion. *See id.*

X Corp. materially breached the DRA when it refused to arbitrate Weber's claims and thus cannot now enforce the DRA against him. *See Rosen*, 143 Wn. App. at 369; *Brown*, 430 F.3d at 1006. The "essence" of the DRA is to require the parties to arbitrate disputes arising from Weber's employment. *DC Farms*, 179

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 6
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

Wn. App. at 220; DRA § 1. Refusing to arbitrate a covered claim is a material breach of the DRA. X Corp. concedes the DRA covers Weber's claims in this action against it and does not argue that the Arbitration Demand was inadequate or that arbitration was not properly commenced. *See generally* Mot.

In short, the Court must deny X Corp.'s motion to compel arbitration because under Washington law, X Corp. cannot enforce a contract it has materially breached. *See Brown*, 430 F.3d at 1012; *Rosen*, 143 Wn. App. at 369. To rule otherwise would create precisely the "perverse incentive scheme" that the Ninth Circuit rejected in *Brown*. 430 F.3d at 1012.

## C.    X Corp. Waived Its Right to Arbitrate this Dispute

Moreover, X Corp. waived the right to arbitrate this dispute because it (1) knew of its existing right to arbitrate the dispute and (2) took intentional acts inconsistent with that existing right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (citing *Hill v. Xerox Bus. Servs.*, 59 F.4th 457, 468-69 (9th Cir. 2023)). "[T]here is no 'concrete test'" for assessing the second prong; the Court must "consider the totality of the parties' actions." *Hill*, 59 F.4th at 471 (citing *Van Ness Townhouses v. Mar. Indus. Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988)). Following *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416 (2022), "there is no 'strong federal policy favor favoring enforcement of arbitration agreements,'" and "the burden [of showing waiver] is no longer 'heavy.'"

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 7
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

*Armstrong*, 59 F.4th at 1014. This burden "is the same as the burden for establishing waiver in any other contractual context." *Id*. at 1015. In Washington, waiver is simply "the intentional relinquishment of a known right." *Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980). Here, X Corp. waived its right to compel arbitration by repeatedly refusing Weber's demand for arbitration until he filed this action in federal court seeking redress of his legal claims.

    X Corp. argues that it did not act inconsistently with the right to arbitrate because it "immediately moved to compel" arbitration, Mot. at 7, but that is a distortion of the undisputed factual record. X Corp. knowingly refused to participate in arbitration when Weber first demanded it in April 2023. *See supra* § II. X Corp. again refused to proceed with arbitration when Weber demanded it a second time in June 2023, knowing that doing so would result in his filing litigation. *Id*. All told, X Corp. waited *more than seven months* after Weber demanded arbitration to file the instant motion to compel. *See id*.; *see* Mot. Because Weber had to file a federal lawsuit as a precondition to X Corp.'s compliance with its own arbitration agreement, X Corp. has taken tactical advantage of the litigation process. That itself is an act inconsistent with an intention to arbitrate. *See Brown*, 430 F.3d at 1012-13 (finding waiver where plaintiff was forced to sue as a last resort).

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 8
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

X Corp. does not deny that twice refusing Weber's demands for arbitration and forcing him to incur the cost of filing this litigation to obtain a resolution of his legal claims were intentional acts. *See* Mot. Nor does it contest that these acts were inconsistent with X Corp.'s right to arbitrate Weber's claims. *See id.; Hill*, 59 F.4th at 468-69. It is thus undisputed that X Corp. intentionally and repeatedly acted inconsistently with its right to arbitrate Weber's claims under the DRA. X Corp. has therefore waived its right to compel arbitration. *See Wagner*, 95 Wn.2d at 102; *Hill*, 59 F.4th at 468-69.

X Corp.'s reliance on *Morgan v. Avis Budget Group, Inc.* for the position that whether it ever responded to Weber's arbitration demand "has no bearing on the question of waiver," is misplaced. Mot. at 7-8 (citing No. 2:17-cv-00869-JAM-KJN, 2017 WL 3315368, at *3 (E.D. Cal. Aug. 3, 2017) (hereinafter "*Avis*")). First, unlike the DRA, the *Avis* arbitration agreement required a party to give the other *notice* of its claim before initiating arbitration. *Compare Avis*, 2017 WL 3315368 at *1 (requiring notice), *with* DRA § 4 (requiring written arbitration demand as sole means of initiating arbitration). Second, in determining that pre-litigation conduct did not establish waiver, *Avis* used the "heavy burden" test that no longer applies. *See* 2017 WL 3315368, at *3; *cf. Armstrong*, 59 F.4th at 1014.

Additionally, X Corp.'s well-documented dilatory tactics undermine one of the key purposes of the FAA, which "is the efficient and expeditious resolution of

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 9
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

claims." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 989 (9th Cir. 2007) (internal quotation marks and citations omitted); *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989) (describing "congressional policy in favor of expeditious and relatively inexpensive means of settling grievances" in arbitration). Here, as in thousands of cases, X Corp. has delayed and obstructed arbitration rather than resolve former employees' disputes in accordance with the DRA. *See supra* § II. These acts are unequivocally inconsistent with the right to arbitrate and forewarn that X Corp. will not arbitrate Weber's claims in good faith. *See Hill*, 59 F.4th at 471.

For all these reasons, this Court should deny X Corp.'s motion.

**D.     In the Alternative, the Court Should Compel X Corp. to Comply with the DRA, JAMS Rules, and JAMS's Rulings.**

If the Court concludes that X Corp. did not breach the DRA or waive its right to compel arbitration, the Court should issue an order compelling arbitration within 30 days that requires X Corp. to comply with JAMS Rules and JAMS's rulings on and interpretations of its own rules. Should X Corp. refuse to comply, *see supra* § II, the Court should allow Weber to move to vacate the order compelling arbitration and to resume litigating his claims against X Corp. before this Court.

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 10
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

**E.    There is no Basis to Stay or Dismiss this Action Because Weber's Claims Against Defendants Musk and Yaccarino are Not Arbitrable.**

The DRA limits arbitration to claims between "the Employee and Company." *See* DRA §§ 1, 3, 5, 9. Weber has asserted claims against Defendants Musk and Yaccarino individually for violating RCW 49.52. *See* ECF No. 18 ¶¶ 8.1-8.7. Neither Musk nor Yaccarino are parties to the DRA, and Weber therefore cannot resolve his claims against them in arbitration. *See generally* DRA. Even if the Court grants X Corp.'s motion to compel arbitration, there is no basis to stay or dismiss the action with respect to Weber's claims against Musk and Yaccarino. *See, e.g., Simmons v. Morgan Stanley Smith Barney, LLC*, 872 F. Supp. 2d 1002, 1023 (S.D. Cal. 2012) (declining to stay proceedings on non-arbitrable claims).

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny X Corp.'s Motion to Compel Arbitration because X Corp. breached the DRA and waived its right to arbitrate. If the Court nevertheless grants X Corp.'s motion, it should order X Corp. to comply with the DRA and JAMS Rules. In no event should the Court stay or dismiss this action because Weber's claims against defendants Musk and Yaccarino are not subject to arbitration.

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 11
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

1    RESPECTFULLY SUBMITTED, this 5th day of December 2023.

FRANK FREED SUBIT & THOMAS LLP

By: */s/ Ellicott K. Dandy*
Ellicott K. Dandy, WSBA No. 57279
Michael C. Subit, WSBA No. 29189
705 Second Avenue, Suite 1200
Seattle, Washington 98104
Phone: (206) 682-6711
Fax:  (206) 682-0401
Email:  msubit@frankfreed.com
Email:  edandy@frankfreed.com

*Attorneys for Plaintiff Arnaud Weber*

WEBER RESPONSE TO MOT.
TO COMPEL ARBITRATION- 12
Case No. 2-23-cv-00233-TOR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711