1
2
3
4
5
6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7
8
9
10
11
12

| | |
|---|---|
| ARNAUD WEBER,<br><br>                      Plaintiff,<br><br>   v.<br><br>X CORP., ELON MUSK, LINDA YACCARINO, and JOHN/JANE DOES III-V,<br><br>                    Defendants. | NO. 2:23-CV-0233-TOR<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

13     BEFORE THE COURT is Defendant X Corp.'s Motion to Compel

14 Arbitration (ECF No. 11). This matter was submitted for consideration without

15 oral argument. The Court has reviewed the record and files therein and is fully

16 informed. For the reasons discussed below, Defendant's Motion to Compel

17 Arbitration (ECF No. 11) is **GRANTED**.

18 **DISCUSSION**

19     This case arises out of Defendant X Corp.'s alleged refusal to pay its former

20 employee, Plaintiff Arnaud Weber, financial compensation which he was due

ORDER GRANTING MOTION TO COMPEL ARBITRATION ~ 1

under the terms of a cash bonus offer extended by X Corp.'s predecessor in interest, Twitter, Inc.  *See* ECF Nos. 18 at 3, § 4.4; 20-1 at 2.  The matter before the Court is whether X Corp. may now compel arbitration under the terms of the parties' Dispute Resolution Agreement ("DRA").

Plaintiff is the former Vice President of Consumer Engineering at Twitter. [1] ECF No. 18 at 3, § 4.2.  Upon acceptance of Twitter's employment offer in July 2019, Plaintiff executed a DRA.  ECF No. 12 at 6-12.  Acceptance of the DRA was not a mandatory condition of Plaintiff's employment, and the contract contained a thirty-day opt-out provision.  *Id.* at 12, § 8.  Plaintiff did not opt out.  *Id.* at 3-4, § 6.

Under the terms of the DRA, signatories agree that "any dispute arising out of or related to [the] Employee's employment . . . or termination of employment" is subject to binding bilateral arbitration.  *Id.* at 10, § 1.  Covered disputes also include those "regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest

---

[1] At the time Plaintiff accepted his employment offer, X Corp. was Twitter, Inc.  X Corp. represents that it merged with Twitter in March 2023 and that Twitter no longer exists.  ECF No. 12 at 2, § 1.

periods, termination, discrimination, harassment, or retaliation, and . . . all other state statutory and common law claims." *Id.*

To commence arbitration under the DRA, the claimant "must demand arbitration in writing and deliver the written demand by hand or first-class mail to the other party within the applicable statute of limitations period." *Id.* at 11, § 4. The commencement clause also dictates:

> The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s) and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department[.] . . . The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

*Id.* Once commenced, arbitrable disputes are tendered to Judicial Arbitration and Mediation Services ("JAMS"), a private alternative dispute provider, and resolved according to then-current JAMS rules. *Id.* at § 5.

Approximately three years into Plaintiff's tenure at Twitter, Defendant awarded Plaintiff a one-time cash bonus in recognition of his "contributions" and "dedication" to the company. ECF No. 20-1 at 2. The award offer letter stated that Plaintiff was entitled to $1,500,000, to be paid in four scheduled installments of

$375,000, contingent upon his "continuous[ ] employ[ment] through each payment date." *Id.* Plaintiff signed and accepted the offer. *Id.*

Plaintiff received his first payment on October 1, 2022. ECF No. 18 at 4, § 4.6. The second scheduled payment was due on January 1, 2023. ECF No. 20-1 at 2. On December 9, 2022, Twitter's Human Resources Department contacted Plaintiff and stated that it was reviewing his bonus award "for compliance" due to the closing of its merger agreement with X Corp. ECF No. 18 at 4, § 4.8. Plaintiff was not paid on January 1. *Id.* at § 4.11. Instead, on January 4, 2023, Plaintiff's employment was terminated. *Id.* at § 4.10. To date, X Corp. has not compensated Plaintiff for the $375,000 due under the second installment. *Id.* at § 4.9.

On April 10, 2023, Plaintiff sent X Corp.'s legal department a written demand for arbitration via certified mail. ECF No. 20-2 at 2-3. Per the instructions in the DRA for commencing a claim, the demand letter identified the parties, background, legal claims in issue, and Plaintiff's desired remedies. *Id.* X Corp. received the letter, but elected not to respond. ECF No. 11 at 3. A similar demand for arbitration was sent to Elon Musk, the owner and former CEO of X Corp., on March 8, 2023. ECF No. 20-3 at 2.

On June 8, 2023, Plaintiff sent a follow-up letter to Linda Yaccarino, Musk's successor as CEO. *Id.* The letter represented that demand letters had been sent to the company and Musk without answer and warned that if a response was not

received by the close of business day on June 30, Plaintiff would "deem that a waiver of the Company's right to arbitration[ ] and . . . pursue his claims against Twitter and the responsible managers in court." *Id.*  Again, Defendants declined to respond.  ECF No. 11 at 3.  On August 17, 2023, Plaintiff instigated the present action in this Court, bringing claims against X Corp. for breach of contract, promissory estoppel, and breach of RCW 49.48.010.  ECF Nos. 1; 18 at 5-6.  As to Defendants Musk, Yaccarino, and John/Jane Does III-IV, Plaintiff claimed violations of RCW 49.52.050.  *Id.* at 7.

X Corp. now seeks an order compelling arbitration under the terms of the DRA.  *See* ECF No. 11.  Plaintiff asks the Court to deny X Corp.'s motion because the company (1) materially breached their contract and (2) waived its right to compel arbitration by ignoring his demand letters.  ECF No. 19 at 6-11.  In the event this Court compels arbitration, Plaintiff requests that it retain the claims against the individual defendants and order X Corp. to arbitrate in good faith under JAMS prescribed rules.  *Id.* at 10.

## DISCUSSION

## I.    Delegation Clause

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, requires courts to enforce agreements to arbitrate on equal terms with other contracts.  *See Morgan v. Sundance Inc.*, 596 U.S. 411, 418 (2022); 9 U.S.C. § 2 (providing that arbitration

1  agreements are "valid, irrevocable, and enforceable, save upon such grounds as

2  exist at law or in equity for the revocation of any contract.").  A party seeking to

3  compel arbitration may petition any United States district court of competent

4  jurisdiction "for an order directing that such arbitration proceed in the manner

5  provided for in such agreement."  9 U.S.C. § 4.

6      When confronted with a motion to compel arbitration, the district court's

7  role is limited to "determining (1) whether a valid agreement to arbitrate exists

8  and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Cox*

9  *v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron*

10  *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  If both

11  conditions are met, then the court must enforce the arbitration agreement as

12  written.  *Chiron*, 207 F.3d at 1130.  The party opposing arbitration bears the

13  burden of proving the agreement is unenforceable.  *Green Tree Fin. Corp.-Ala. v.*

14  *Randolph*, 531 U.S. 79, 91 (2000).  Here, neither party disputes that Plaintiff's

15  claims for withheld compensation fall within the scope of the DRA.  *See* ECF No.

16  12 at 10, § 1.  Thus, the Court's inquiry is circumscribed to determining whether

17  the agreement to arbitrate is enforceable.

18      As a threshold matter, the Court must ask whether DRA delegated the

19  gateway issue of determining the agreement's validity to the arbitrator.  *See Rent-*

20  *A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (recognizing that parties

may agree to arbitrate gateway issues).  A delegation of gateway issues to the arbitrator will only be found where the agreement "clearly and unmistakably" so provides.  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  When a valid delegation clause exists, then the court must honor the agreement and reserve its judgment on the question of arbitrability.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ----, 139 S.Ct. 524, 530 (2019); *see also Reynolds v. Safeway, Inc.*, No. C22-0197TL, 2023 WL 2560853, at *3 (W.D. Wash. Mar. 17, 2023) ("The only way to circumvent this rule is by showing that the agreement to delegate arbitrability is itself unenforceable.").

Different presumptions of delegation apply depending on the category of dispute.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).  The first category embraces substantive "question[s] of arbitrability," which are presumptively for a court to decide.  *Id.* at 84.  Questions of arbitrability include, for instance, "whether the parties are bound by a given arbitration clause" and whether a binding arbitration agreement applies to a "particular type of controversy."  *Id.* at 84.  The second category encompasses "procedural questions," which are presumptively for the arbitrator to decide.  *Id.*  These procedural issues concern, for example, "prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate."  *Id.* at 85 (quotations and citation omitted) (emphasis omitted).

1    The DRA in this case incorporates a broad delegation clause which provides

2    that covered disputes include "disputes arising out of or relating to interpretation or

3    application of this Agreement, including the enforceability, revocability or validity

4    of the Agreement or any portion of the Agreement."  ECF No. 12 at 10, § 1.  The

5    Ninth Circuit has held that similar language constituted clear and unmistakable

6    evidence of the parties' intent to delegate threshold issues to the arbitrator.  *Momot*

7    *v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding that language delegating "the

8    validity or application of any of the provisions of [the arbitration clause]" was clear

9    and unmistakable evidence of the parties' intent to delegate threshold questions of

10   arbitrability to arbitrators).  Other provisions of the DRA underscore this apparent

11   assignment.  *Compare* ECF No. 12 at 11, § 4 (dictating that "[t]he arbitrator shall

12   resolve all disputes regarding the timeliness or propriety of the demand for

13   arbitration") *with Tobon v. Sherwin-Williams Co.*, 22-cv-00375-VC, 2022 WL

14   3645069, at *1 (N.D. Cal. August 16, 2022) (unreported) (concluding that

15   language referring "all disputes regarding the timeliness or propriety of a demand

16   for an arbitration" to the arbitrator constituted a clear and unmistakable delegation

17   of questions of arbitrability).

18   The above language delegates Plaintiff's claim that X Corp. breached the

19   DRA to the arbitrator to decide in the first instance.  At core, this defense pertains

20   to issues of timing—namely, X Corp.'s alleged failure to respond to Plaintiff's

demands for arbitration within a reasonable time and X Corp.'s later delay in moving to compel arbitration once Plaintiff commenced this action.  Since the matter is fundamentally an issue of timing, and the language above delegates all issues of timing to the arbitrator, the question of whether X Corp. materially breached the DRA is reserved to the arbitrator to decide.  *See, e.g.*, *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *6 (N.D. Cal. Dec. 11, 2018), *aff'd*, 59 F.4th 1011 (9th Cir. 2023) (concluding the issue of forfeiture was reserved to the arbitrator because it implicated issues of timing).

Oppositely, the Court does not find the parties intended to delegate the issue of waiver, despite the superficially broad language of the delegation clause.  In the Ninth Circuit, the burden of delegating arbitrability is particularly onerous where the party opposing arbitration claims waiver by litigation conduct.  *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) ("We have made clear that courts generally decide whether a party has waived his right to arbitration by litigation conduct."); *see also, e.g.*, *Armstrong v. Michaels Stores, Inc.*, 2018 WL 6505997, at *7-8 (finding that an employment contract did not delegate the issue of waiver despite language providing that the Arbitrator would have "exclusive" authority to resolve "any claim that all or any part of this Agreement is void or voidable and pertaining to any waiver" because the conjunctive word "and" created ambiguity); *see also, e.g.*, *Kater v. Churchill Downs Inc.*, No. 3:15-cv-00612-RBL, 2018 WL

5734656, at *3 (W.D. Wash. Nov. 2, 2018) (declining to delegate the threshold issues of arbitrability, including waiver, where the terms of use provided that "any dispute, claim or controversy arising out of or relating" to the "validity, interpretation, enforceability, or arbitrability of these Terms of Use" because the language did not clearly and unmistakably delegate the issue of waiver through litigation conduct).  In view of this authority exhorting courts to remain vigilant where issues of waiver are implicated, the lack of any specific reference to waiver in the agreement, and X Corp.'s failure to brief the issue, the Court finds that the issue of waiver is ripe for judicial resolution.

## II.    Waiver of the Right to Arbitrate

Plaintiff urges that the DRA is unenforceable because X Corp. waived its right to compel arbitration.  ECF No. 19 at 3-10.  "Waiver" refers to "circumstances under which a party is foreclosed from electing an arbitration forum." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002), *amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002).  The FAA "supplies the rules for waiver." *Id.* at 1269; *see also Morgan*, 596 U.S. at 414 (applying federal law standards to the question of waiver).  In determining whether a waiver has occurred, "the court focuses on the actions of the person who held the right." *Morgan*, 596 U.S. at 417.  A two-step test applies.  The party claiming waiver must establish "(1) knowledge of an existing right to compel arbitration and (2)

intentional acts inconsistent with that existing right." *Armstrong*, 59 F.4th at 1015. X Corp. does not dispute that it was aware of its right to compel arbitration, so the Court focuses on the second factor.

In assessing whether a party's intentional actions were inconsistent with an existing right to compel arbitration, courts undertake a holistic evaluation that accounts for "'the totality of the parties' actions.'" *Id.* (quoting *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023). The Ninth Circuit has found the second element satisfied when a party " '(1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id.* (quoting *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019), *abrogated on other grounds by Morgan*, 596 U.S. 411); *see also Martin*, 829 F.3d at 1125 ("We find this element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court."). The central inquiry is whether a party's actions, "even if seemingly commonplace and not an express disavowal of arbitral forums, evinced the party's partiality for a judicial resolution of the claims." *Hill*, 59 F.4th at 472.

For example, in *Hill*, the Ninth Circuit affirmed a district court order denying a motion to compel arbitration by Xerox Business Services (XBS), a call

1  center operation.  59 F.4th at 460.  As the court there recounted, XBS had spent

2  years litigating the underlying legal merits of the claims made by the plaintiff class

3  in a variety of judicial forums (the district court, Ninth Circuit, and Washington

4  State Supreme Court).  *Id.* at 473.  The Ninth Circuit concluded that XBS's

5  procedural decisions established a "tactical choice to resolve the claims judicially."

6  *Id.*

7        In other instances, a party may not take advantage of the judicial process but

8  nevertheless waive its right to participate in properly initiated arbitration

9  proceedings by simply refusing to arbitrate.  In *Brown v. Dillard's, Inc.*, Brown, a

10  former employee of Dillard's, claimed she was wrongfully terminated for

11  falsifying her timesheets.  430 F.3d 1004, 1008 (9th Cir. 2005).  When Brown

12  properly commenced arbitration proceedings according to the rules of the

13  American Arbitration Association (AAA) that governed her arbitration agreement

14  with Dillard's, Dillard's refused to participate.  *Id.*  More specifically, Dillard's

15  declined to pay its share of the filing fee or to respond to AAA's correspondence,

16  leading to AAA returning Brown's notice of intent to arbitrate.  *Id.* at 1008-9.

17  Brown attempted to contact Dillard's legal department for over two months

18  without avail.  *Id.*  When she finally reached a representative of Dillard's legal

19  department, Dillard's informed Brown that "her complaint had no merit and that

20  Dillard's refused to arbitrate."  *Id.* at 1009.  Brown then filed suit, to which

1   Dillard's responded by filing a motion to compel arbitration.  *Id.*

2       The Ninth Circuit upheld the district court's denial of Dillard's motion to

3   compel.  In addition to finding that Dillard's actions constituted a material breach

4   of the parties' contract under California law, the court had "no difficulty finding

5   that Dillard's waived its right to arbitrate Brown's claims," concluding that

6   Dillard's "refusal to arbitrate after being served with Brown's notice of intent to

7   arbitrate" satisfied the second factor.  *Id.* at 1012.[2]

8       In the instant case, Plaintiff argues that X Corp. waived its right to compel

9   arbitration by failing to respond to his repeated demands for arbitration.  X Corp.

10  retorts (1) that Plaintiff did not properly initiate arbitration proceedings such that

11  its refusal to respond was unlawful, and (2) that "nothing in the DRA requires X

12  Corp. to respond to an arbitration demand within any set period." No. 22 at 12-13.

13

14      [2] Under our prior case law, a party seeking to establish waiver must have

15  successfully established "(1) knowledge of an existing right to compel arbitration,

16  (2) intentional acts inconsistent with that existing right, *and* (3) prejudice to the

17  party opposing arbitration resulting from such inconsistent acts."  *Brown*, 430 F.3d

18  at 1012 (emphasis added).  In *Brown*, Dillard's conceded the first two elements

19  were met, but argued that Brown had not established prejudice.  *Id.*  In *Morgan*, the

20  Supreme Court eliminated this third required element.  *See* 596 U.S. at 419.

1    The Court finds that Plaintiff appropriately initiated arbitration proceedings

2    according to the terms of the DRA.  As discussed in the background portion of this

3    Order, Section 4 of the DRA is titled "Starting The Arbitration" and covers how a

4    claimant should commence arbitration.  *See* ECF No. 12 at 11.  Specifically, the

5    clause provides that the claims must be brought within the applicable statute of

6    limitations; demanded in writing; delivered by hand or first-class mail; addressed

7    to the company's legal department; and must identify the parties, legal and factual

8    basis for the claims, and the remedy sought.  *Id.*  Although Plaintiff observed these

9    conditions, X Corp. insists Plaintiff's claims were not properly commenced

10   because the JAMS Employment Arbitration Rules & Procedures specify a different

11   procedure for commencing arbitration.  ECF No. 11 at 9; *see, e.g.*, Rule 5, JAMS

12   Employment Arbitration Rules & Procedures (specifying how arbitration is

13   commenced in JAMS proceedings).

14   The text of the DRA makes it self-evident that the parties did not intend for

15   arbitration to commence according to procedures delineated by JAMS.  To read the

16   agreement any other way would render the entirety of Section 4 superfluous.  *See*

17   *Snohomish Cnty. Public Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173

18   Wash.2d 829, 856 (2012) ("An interpretation of a contract that gives effect to all

19   provisions is favored over an interpretation that render a provision ineffective, and

20   a court should not disregard language that the parties have used.").  The Court is

loath to find that Plaintiff's careful compliance with the explicit language of the DRA was insufficient to initiate arbitration. *Compare, e.g.*, *Cox*, 533 F.3d at 1122 (where the arbitration clause specified that disputes should be settled according to the then current Model Employment Arbitration Procedures of the AAA, plaintiff's failure to follow AAA procedures was not justified where the agreement otherwise did not provide how arbitration proceedings were to be conducted). Further, Section 5 of the DRA—titled "How Arbitration Proceedings Are Conducted"— clarifies the parties will bring "any claim *in* arbitration" before JAMS and that "[d]iscovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedure." ECF No. 12 at 11 (emphasis added). A claim cannot be "in arbitration" such that both parties could bring it to the attention of JAMS unless it was first properly commenced. Accordingly, the Court finds that Plaintiff properly initiated arbitration proceedings by complying with Section 4 of the DRA.[3]

---

[3] Even if Plaintiff did not properly initiate arbitration under the DRA, X Corp. would not necessarily automatically prevail under a waiver analysis. *See Cox*, 533 F.3d at 1125 (holding that the defendant hotel corporation "could have waived its right to arbitrate notwithstanding [the plaintiff's] failure to file a claim with the AAA").

1    X Corp. next presses that even if Plaintiff's claims were properly

2 commenced, it was not obligated to respond to Plaintiff's demand for arbitration

3 within a certain amount of time and that, unlike the corporation in *Brown*, it never

4 "expressly" refused arbitration.  ECF No. 22 at 6-7.  These contentions are not

5 well-taken.  For over four months—from April 10, 2023, when Plaintiff sent his

6 initial demand letter to X Corp.'s legal department, to August 17, 2023, when

7 Plaintiff filed his initial complaint—X Corp. was aware that Plaintiff desired to

8 participate in arbitration according to the terms of the DRA.  *See* ECF No. 11 at 3

9 (admitting that it received Plaintiff's April and June correspondence, but decided

10 not to respond).  At bottom, X Corp. asks the Court to rubber-stamp a system

11 requiring aggrieved employees to initiate arbitration according to the procedures

12 outlined in the DRA, but to allow X Corp. to put off arbitration indefinitely by

13 declining to respond to requests for such proceedings until employees petition the

14 courts—the very forum that signatories to the DRA intend to avoid—to obtain

15 enforcement of their arbitration agreements.  This is not the kind of procedural

16 efficiency that the FAA envisions.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. ---

17 --, 138 S.Ct. 1612, 1623 (2018) (extolling the "virtues" of individual arbitration,

18 including "its speed and simplicity and inexpensiveness"); *see also Stolt-Nielsen*

19 *S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) ("In bilateral arbitration,

20 parties forgo the procedural rigor and appellate review of the courts in order to

realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.").

While the Court wishes to make clear that it does not sanction X Corp.'s conduct in these proceedings, neither is it confident that Plaintiff has met the "'heavy burden'" of establishing waiver. *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (2009) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988)). It is not clear that X Corp.'s failure to respond constituted a waiver of its right to arbitrate under the applicable law. In all the waiver cases which the Court has reviewed where courts have declined to enforce an arbitration agreement, the party seeking to compel arbitration has not only failed to respond to a demand for arbitration or to compel arbitration itself but also either (1) expressly disavowed the other party's right to arbitrate, *see, e.g.*, *Brown*, 430 F.3d at 1012, or (2) taken advantage of the judicial process by engaging in protracted litigation efforts, *see, e.g.*, *Hill*, 59 F.4th at 473; *see also*, *e.g.*, *Martin*, 829 F.3d at 1122 (declining to compel arbitration after 17 months had passed since the filing of the original complaint, the parties had engaged in extensive discovery, and the parties informed the district court that they believed they were "better off" in federal court when the court inquired whether they would be filing a motion to compel at a scheduling conference).

As X Corp. points out, it never expressly informed Plaintiff that it would not arbitrate his claims; therefore, his case is not within the four corners of *Brown*. Plaintiff makes the novel argument that X Corp. took advantage of the judicial process by essentially forcing him to file a lawsuit as a prerequisite to obtaining arbitration. ECF No. 19 at 8-9. While it is true that a party does not need to explicitly broadcast its intent to avoid arbitration for a court to apply the doctrine of waiver, our case law contemplates that in the absence of an express disavowal, the party seeking to compel arbitration must "actively litigate[ ] the merits of a case for a prolonged period of time." *Armstrong*, 59 F.4th at 1015 (internal quotations and citations omitted).

Under the above set of facts, Plaintiff has not shown that X Corp. waived its right to compel arbitration by actively litigating the merits of his case. Unlike the defendants in *Hill* and *Martin*, X Corp. did not "actively litigate" the merits of Plaintiff's case. X Corp. has not engaged in discovery, filed any motion discussing the merits of Plaintiff's claims, or even answered the complaint. Indeed, X Corp.'s first—albeit, again, delayed—action in this Court was to file a motion to compel arbitration. Accordingly, the Court cannot conclude that X Corp. waived its right to arbitration by taking advantage of the judicial process.

//

//

1   **III.    Stay of Remaining Claims**

2           In the event that this Court compels arbitration, Plaintiff asks the Court not

3   to stay the claims against Defendants Musk, Yaccarino, and Does III-V, whom he

4   represents are not parties to the DRA.  ECF No. 19 at 11.  Plaintiff also asserts that

5   in related cases brought by similarly aggrieved employees, X Corp. has obstructed

6   the arbitration process, refused to comply with JAMS rules and orders, and, in

7   some instances, flatly refused to arbitrate where it disagreed with the outcome of

8   JAMS's interpretations of its rules.  *Id.* at 10.  Plaintiff asks the Court to include in

9   any order compelling arbitration that (1) such proceedings must commence within

10  30 days, (2) that X Corp. must comply with JAMS's rules and interpretations of its

11  rules, and (3) that he be permitted to move to vacate the order compelling

12  arbitration and resume litigation if X Corp. fails to abide by the terms of the DRA.

13          The Court begins with the issue of whether Plaintiff's remaining claims

14  against Musk, Yaccarino, and Does III-IV should be stayed.  The parties are in

15  apparent agreement that the claims against the individual defendants are

16  nonarbitrable.  *See* ECF No. 12 at 10, § 1 (providing that the DRA applies to

17  disputes arising between the Employee and Twitter "or one of its affiliates,

18  successor, subsidiaries, or parent companies").  "[I]t is in the Court's discretion

19  'whether to stay, for considerations of economy and efficiency, an entire action,

20  including issues not arbitrable, pending arbitration.'"  *Maguire Ins. Agency, Inc. v.*

*Amynta Agency, Inc.*, 652 F. Supp. 3d 1313, 1328 (W.D. Wash. 2023) (quoting

*Kater v. Churchill Downs Inc.*, No. C15-612-RBL, 2019 WL 3944323, at *1 (W.D.

Wash. Aug. 21, 2019)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55

(1936) ("[T]he power to stay proceedings is incidental to the power inherent in

every court to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel, and for litigants.").  A court should enter a

stay of nonarbitrable claims "where the arbitrable claims predominate, or where

the outcome of the nonarbitrable claims will depend upon the arbitrator's

decision."  *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412,

415 (9th Cir. 2002); *see also Maguire Ins. Agency*, 652 F. Supp. 3d at 1328

(considering whether the nonarbitrable claims "depend[ ] upon the same facts and

[are] inherently inseparable from" the arbitrable claims).

The arbitrable and nonarbitrable claims in this case are sufficiently

intertwined such that the Court finds a stay of the nonarbitrable claims is

appropriate at this time.  Although the claims against X Corp. and the individual

defendants are based on distinct laws, they fundamentally implicate the same facts

and legal analysis.  For instance, whether X Corp. breached its employment

contract with Plaintiff or violated RCW 49.48.010 (requiring an employer to pay

wages due a terminated employee) by unlawfully withholding the $375,000 cash

bonus from Plaintiff is also dispositive of whether the individual defendants

illegally withheld wages from Plaintiff under RCW 49.52.050. *See* ECF No. 18 at 5-7. A stay will prevent a duplication of efforts in this case and any confusion that could result from potentially conflicting rulings by the Court and JAMS.

Accordingly, the Court will compel the parties to submit to arbitration. X Corp. complains that the newspaper articles and related cases Plaintiff references in arguing that X Corp. intends to flout the DRA once compelled to arbitration are irrelevant and not subject to judicial notice. ECF No. 22 at 12-13. Frankly, the Court need not reach this issue because X Corp.'s conduct in these proceedings alone raises questions as to the sincerity of its intentions to arbitrate Plaintiff's claims according to the terms of the DRA.

The Court orders the parties to proceed to arbitration and to strictly observe the terms of the DRA. *See* 9 U.S.C. § 4. Because Plaintiff properly initiated arbitration and X Corp. has been on notice thereof since April 2023, the parties will cooperate to promptly bring the claims before JAMS. ECF No. 12 at 11, § 5.

//

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. X Corp.'s Motion to Compel Arbitration (ECF No. 11) is **GRANTED**. The parties will cooperate to promptly initiate the claims before JAMS within 30 days. The gateway question of whether X Corp. materially breached the DRA is reserved to the arbitrator. The parties will participate in arbitration according to the terms of DRA.

2. The Court **STAYS** these proceedings pending arbitration. The parties are directed to file a joint status report within fourteen days of the completion of arbitration proceedings.

The District Court Executive is directed to enter this Order and furnish copies to counsel. The file remains **OPEN** yet **STAYED** pending arbitration.

DATED January 8, 2023.



THOMAS O. RICE
United States District Judge